Raymond C. BLIM, Morris E. Kinghorn, J.F. Vukasovic, Ralph V. Oldham, Stanley L. Boarts, Eugene Firestone, Wallace S. Repetto, and Larry N. Stewart, Plaintiffs-Appellees,

v.

**WESTERN ELECTRIC COMPANY, INC., Defendant-Appellant.**

No. 80–1973.

United States Court of Appeals, Tenth Circuit.

April 3, 1984.

Paul M. Thompson, Richmond, Va. (Christine H. Perdue also of Hunton & Williams, Richmond, Va., and William D. Curlee of Lytle, Soule, Curlee, Harrington, Chandler & Van Dyke, Oklahoma City, Okl., with him on the brief), for defendant-appellant.

James R. Moore and Philip F. Horning of Horning, Johnson & Grove, Oklahoma City, Okl. (Judson M. Fink, Norman, Okl., with them on the brief), for plaintiffs-appellees.

Before SETH, Chief Judge, and BREITENSTEIN and LOGAN, Circuit Judges.

PER CURIAM.

Eight individual plaintiffs brought this action against Western Electric alleging violations of the Age Discrimination in Employment Act of 1967 (ADEA). Prior to 1974 all eight plaintiffs were section chiefs at Western's Oklahoma City office. Due to a reduction in work force during 1974 and 1975 they were demoted to nonsupervisory positions. Beginning in October 1976, Western began to increase the number of section chiefs through promotions and re-promotions of previously demoted supervisors. No plaintiff has been repromoted to section chief except Mr. Kinghorn who was repromoted on March 21, 1979. The plaintiffs claim that they were not repromoted because of age discrimination practiced by the defendant.

The jury found for the plaintiffs at trial. By special interrogatory the jury also found that the violations of ADEA were willful in each instance. The defendant made timely alternative motions for a new trial and judgment notwithstanding the verdict. The court denied both motions.

In a separate trial for damages the court entered a judgment for the plaintiffs in the amount of $901,440.78, 496 F.Supp. 818. This sum included back pay, front pay, a lump sum annuity for social security losses, damages for lost purchasing power on back wages, damages for losses due to payment of additional income taxes, and liquidated damages in an amount equal to each of the enumerated items of damages. Also, the trial court awarded $175,000 in attorney's fees.

The defendant appeals on numerous grounds, but we comment only on the primary issues, which are (1) whether the plaintiffs' evidence was properly admitted; (2) whether the evidence supported the verdict; and (3) whether the award of damages and attorney's fees was proper and reasonable.

■ The defendant claims that the trial court abused its discretion by admitting into evidence certain reports and testimony. The admission of evidence is discretionary with the trial court and will not be disturbed on appeal unless clearly erroneous. *Keen v. Detroit Diesel Allison,* 569 F.2d 547 (10th Cir.1978). There is no indication in the record that the trial court abused its discretion in admitting the Moore Report, the Conover Report, the testimony of Gerald Hollingsworth, or the statistical data presented by the plaintiffs' expert.

■■ The Moore Report is an internal Department of Labor document that memorialized a conversation between a DOL investigator, G. VanDiver Moore, and the Equal Opportunity Coordinator at Western Electric, Audrey Burns. The document concerned the possibility of reconciliation between the defendant and the plaintiffs. The court properly admitted the report pur-

suant to Federal Rules of Evidence 803(6) and 803(8). Audrey Burns testified about the conversation and carefully reviewed the document for the jury, outlining phrases, words, and attitudes with which she did not agree. There could be some serious doubt as to the admissibility of the Moore Report had it not been so fully tested and developed through the testimony of the witness Burns, the Equal Opportunity coordinator for Western Electric, who had provided much of the information. This presented to the jury the source of the information and its context. The trial court has the discretion of balancing the prejudicial effect with the probative value. *Texas Eastern Transmission v. Marine Office, Etc.,* 579 F.2d 561 (10th Cir.1978). We find no abuse of discretion.

■ The Conover Report is a report prepared by the defendant concerning the average age of engineers in the company. The report considered age to be a factor in unit costs and productivity. The defendant claims that the evidence was collateral and highly prejudicial. The report was admitted as evidence of an overall company policy of age discrimination. The court gave a limiting instruction to the jury advising them of the weight to be afforded to the report. The report was properly admitted. *See Texas Eastern Transmission v. Marine Office, Etc.,* 579 F.2d 561 (10th Cir. 1978), and *John McShain, Inc. v. Cessna Aircraft Co.,* 563 F.2d 632 (3d Cir.1977).

■ Gerald Hollingsworth was the affirmative action officer for the defendant during the time of the reduction in force and the alleged discrimination. He testified that the defendant's sister company, Southwestern Bell Telephone Company (SWB), was interested in hiring only younger white male section chiefs from Western. As a result of SWB's request, a number of younger employees were laterally transferred into SWB, and were therefore not demoted or terminated in the subsequent reduction in work force at Western. The defendant claims the evidence is irrelevant and highly prejudicial. The court denied the defendant's objection to the Hollings-

worth testimony. The evidence was offered to show motive for the transfer and the protection of a particular group. We find no error.

■ The defendant also claims that plaintiffs' statistical evidence lacked a sufficient factual foundation. Both the plaintiffs and defendant presented statistical data to the jury for consideration. We find no basis for the assertion that it was error to admit the evidence. Both parties developed a reasonable basis in the evidence for their respective statistical studies. The data and the methods were tested on cross-examination. The objections of the appellant appear to be directed in large part to the weight to be given the studies. Whether the evidence supported the plaintiffs' statistical conclusions and what weight should be accorded to those statistics are issues for the jury. *Laugesen v. Anaconda Co.,* 510 F.2d 307, 317 (6th Cir.1975). Therefore, the trial court properly admitted the data.

The defendant argues that the trial court erred in denying its motion for judgment notwithstanding the verdict. In reviewing the evidence under prevailing standards in this circuit we find no error.

■ In this ADEA action the plaintiffs must make a prima facie showing that the defendant's failure to repromote them was due to unlawful age discrimination. Then the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiffs were not repromoted for a legitimate, nondiscriminatory reason. The plaintiffs then have the ultimate burden of persuasion by showing that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is merely a pretext. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Mistretta v. Sandia Corp.,* 649 F.2d 1383 (10th Cir. 1981). The standards were followed by the trial court and the trial court correctly instructed the jury.

█ The plaintiffs presented testimony, statistical data, and circumstantial evidence tending to prove the defendant's discriminatory conduct. The defendant provided statistical data and testimony from the plaintiffs' supervisors tending to prove that the plaintiffs lacked sufficient job performance records to be promoted. We must conclude that the jury, considering all the evidence and with all reasonable inferences, could properly find that the defendant failed to repromote the plaintiffs because of unlawful age discrimination. Therefore, the trial court properly denied the defendant's motion for a judgment NOV and motion for a new trial.

The defendant claims the trial court erred by awarding damages to the plaintiffs in the form of front pay, lost purchasing power, compensation for increased tax liability, an annuity for lost social security benefits, and liquidated damages.

The trial court awarded each plaintiff front pay from the date of judgment to the date of their respective projected dates of retirement. The amount equalled the difference between the salary being received at the time the judgment was entered and what each plaintiff would have made until the assumed retirement dates had they been repromoted. The plaintiffs originally requested the equitable remedy of repromotion to their desired section chief positions. However, at trial they indicated that they would prefer front pay damages over repromotion. Apparently all the plaintiffs except Mr. Kinghorn remain employed at Western Electric in nonsupervisory positions.

█ The district court has the equitable power to repromote the plaintiffs under the ADEA, 29 U.S.C. § 626(b). The trial court must exercise its discretion in awarding equitable remedies in light of the objectives of the statute being enforced. *Hecht Co. v. Bowles*, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944). The district court's decision not to order offers of reinstatement must be measured against the purposes of the ADEA. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417, 95 S.Ct.

2362, 2371, 45 L.Ed.2d 280 (1975). The ADEA has a broad purpose of insuring that "older individuals who desire to work will not be denied employment opportunities solely on the basis of age." H.R.Rep No. 950, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 504. Therefore, equitable remedies fashioned by the trial court which further the intent, purpose and language of the ADEA should be upheld.

█ In *EEOC v. Sandia Corp.*, 639 F.2d 600 (10th Cir.1980), we found that the trial court did not abuse its discretion by ordering offers of reinstatement even though some plaintiffs previously stated that they would not accept reemployment with the defendant. We pointed out that reinstatement has the dual purpose of protecting the discharged employee and demonstrating the employer's good faith to the other employees. *EEOC v. Sandia Corp.*, 639 F.2d 600, 638 (10th Cir.1980). Although preferences expressed by the parties may help the trial court fashion appropriate remedies, the determination of equitable remedies rests with the court. The court's judgment should be guided by sound legal principles. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975).

█ In *Albemarle* the Supreme Court pointed out that a district court may deny an equitable remedy permitted by a federal statute if it does not frustrate the central purpose of that statute. Since the trial court's decision must be examined in light of the statute's intent and purposes, the trial court should express its reasons for denying the equitable relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975).

The only reason stated by the trial court for not repromoting the plaintiffs was that they preferred damages. The court said:

"The plaintiffs were ready, willing and able to serve as Section Chiefs on the dates of the first promotions and repromotions and have been so up to the present time, although each at trial ex-

pressed a preference for 'front pay' in lieu of reinstatement."

The ADEA enforcement section, 29 U.S.C. § 626(b), provides for both equitable and legal remedies.

■ Assuming, without deciding, that a court may award front pay under the ADEA, *compare Cancellier v. Federated Department Stores*, 672 F.2d 1312, 1319 (9th Cir.1982), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113, *with Kolb v. Goldring, Inc.*, 694 F.2d 869, 874 n. 4 (1st Cir.1982), we conclude that the trial court erred in granting front pay in the instant case. Reinstatement is the preferred remedy under the ADEA. The focus of the congressional statement of purpose is on the continuing employment of older workers. *See* 29 U.S.C. § 621. Thus, reinstatement best serves Congress' purpose in enacting the ADEA. Furthermore, an award of front pay is always somewhat speculative. We therefore hold that courts should order reinstatement under the ADEA whenever it is an appropriate remedy.

■ In the instant case, the only reason that the trial court gave for awarding front pay rather than repromotion is that plaintiffs preferred damages. Standing alone plaintiffs' preference for damages clearly does not justify awarding front pay rather than reinstatement. Repromotion is particularly appropriate in the instant case. An atmosphere of hostility does not appear to exist between plaintiffs and defendant. All plaintiffs still work for defendant; all have been section chiefs, the position to which they would be repromoted. The Western Electric plant where plaintiffs work employs many section chiefs, and vacancies in that position are frequent. We hold that the trial court erred in granting front pay instead of reinstatement.

■ The trial court also erred in granting an award for lost purchasing power. Prejudgment interest and an award for lost purchasing power serve the same purpose, and if one is barred, the other should be

barred as well. *Saunders v. Claytor*, 629 F.2d 596, 598 (9th Cir.1980), *cert. denied*, 450 U.S. 980, 101 S.Ct. 1515, 67 L.Ed.2d 815 (1981); *Blake v. Califano*, 626 F.2d 891, 895 (D.C.Cir.1980).

■ In *Brooklyn Bank v. O'Neil*, 324 U.S. 697, 715, 65 S.Ct. 895, 906, 89 L.Ed. 1296 (1945), the Supreme Court held that prejudgment interest was not available under the Fair Labor Standards Act because liquidated damages, which at that time were mandatory under the FLSA[1], compensated plaintiffs for any delay. The ADEA incorporates 29 U.S.C. § 216(b), the FLSA provision for liquidated damages. Liquidated damages are available under the ADEA, however, only when there is a willful violation. 29 U.S.C. § 626(b). The Ninth Circuit has held that liquidated damages under the ADEA are therefore punitive. *Kelly v. American Standard, Inc.*, 640 F.2d 974, 979 (9th Cir.1981). In a later ADEA case the Ninth Circuit granted both prejudgment interest and liquidated damages. *Criswell v. Western Airlines, Inc.*, 709 F.2d 544 (9th Cir.1983). The court cited *Kelly* for the proposition that "liquidated damages and prejudgment interest serve different purposes in making ADEA plaintiffs whole." *Id.* at 556. We think that the legislative history undercuts that court's reasoning. The House Conference Report on the 1978 amendments to the ADEA states, "The ADEA ... does not provide remedies of a punitive nature." H.Conf.Rep. No. 95–950, 95th Cong.2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Ad.News 528, 535. Thus, we agree with the circuits that still regard *Brooklyn Bank* as pertinent and hold that prejudgment interest is not available under the ADEA if plaintiffs receive liquidated damages. *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1102 (8th Cir.1982) (plaintiffs not entitled to both prejudgment interest and liquidated damages absent exceptional circumstances); *Kolb v. Goldring, Inc.*, 694 F.2d 869, 875 (1st Cir.1982). *See also Hodgson v. Miller Brewing Co.*, 457 F.2d

---

**1.** A 1947 amendment to the FLSA makes liquidated damages discretionary in FLSA cases if the employer shows that he acted in good faith. *See* 29 U.S.C. § 260.

221, 229 (7th Cir.1972) (both prejudgment interest and liquidated damages not available under the FLSA); *McClanahan v. Mathews,* 440 F.2d 320, 325–26 (6th Cir. 1971) (FLSA). Thus, the award for lost purchasing power was erroneous.

The district court also erred in awarding damages to plaintiffs for increased tax liability caused by the receipt of damages in a lump sum. The back pay [2] will be paid in a single year, reported in that year, and taxed at the rates then in effect. *See Driscoll v. Exxon Corp.,* 74–1 U.S.T.C. ¶ 9440 (S.D.N.Y.1974); Rev.Rul. 78–336, 1978–2 C.B. 255. However, the tax laws contain five-year averaging provisions that will eliminate nearly all of any penalty that would otherwise result from receipt of a lump sum payment. *See* I.R.C. §§ 1301–05. We are unsure whether liquidated damages are taxable,[3] but if so the five-year averaging provisions would also apply to these sums. Because plaintiffs will suffer no significant tax penalty, the court's award for increased tax liability was improper.

The trial court also awarded plaintiffs damages for loss of Bell Systems Savings Plan and social security benefits. Fringe benefits are proper damages under the ADEA. H.Conf.Rep. No. 95–950, 95th Cong. 2d Sess. 13, *reprinted in* 1978 U.S. Code Cong. & Ad.News 528, 535. On appeal defendant makes no argument that the award for the Bell Systems Savings Plan losses was improper. We cannot determine whether reinstatement will fully restore plaintiffs' social security entitlements. To the extent that repromotion will not fully restore plaintiffs' entitlements to social security benefits, plaintiffs are entitled to compensation for their loss.

The ADEA relies on the Fair Labor Standards Act for computation of liquidated damages. *See* 29 U.S.C. § 216(b). That section provides:

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

Section 626(b) directs courts to substitute "amounts owing to a person" under the ADEA for "unpaid minimum wages" and "unpaid overtime compensation" when applying § 216(b) to calculate liquidated damages under the ADEA. The House Conference Report on the 1978 amendments to the ADEA states that liquidated damages are "calculated as an amount equal to the pecuniary loss" and cites "wages, fringes and other job related benefits" as examples of pecuniary loss. H.Conf.Rep. No. 95–950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Ad.News 528, 535. Thus, the liquidated damages award should be equal to the award for back pay and loss of Bell Systems Savings Plan benefits, and any award for social security benefits that will not be restored by repromotion.

The defendant claims that the trial court erred in awarding attorney's fees of $175,-000. The trial court's findings of fact and conclusions of law do not set out its rationale for the award. The Supreme Court and this Court have established the criteria for determining reasonable attorney's fees. *See Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983). Since we have changed the award on appeal, the trial court should reexamine the matter of fees on remand.

The judgment is affirmed in part, reversed in part, and the case is remanded

---

**2.** Back pay is taxable to the plaintiffs and subject to income tax and social security withholding. *Freeman v. Blake Co.,* 84 F.Supp. 700, 704 (D.Mass.1949); Rev.Rul. 55–203, 1955–1 C.B. 114.

**3.** Amounts paid for liquidated damages and attorney's fees are not remuneration for employment and thus not subject to tax withholding. Rev.Rul. 80–364, 1980–2 C.B. 294.

for further proceedings in accordance herewith.

SETH, Chief Judge, concurring and dissenting:

I would decide the issue as to whether "front pay" is a permissible remedy under the Act as this is the basic issue presented on appeal. Front pay was awarded by the trial court, and I would hold that this was not a remedy contemplated by the ADEA. *Kolb v. Goldring, Inc.*, 694 F.2d 869 (1st Cir.).

It must be recognized that the equitable jurisdiction of a federal court should be flexibly and broadly construed to afford complete relief in light of the statutory purposes. *Mitchell v. DeMario Jewelry*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323. However, such equitable powers cannot be used to expand or override the limited legal remedies available under the ADEA. The Congress very clearly distinguishes between the legal and equitable remedies available under the ADEA. *See Lorillard v. Pons*, 434 U.S. 575, 583, 98 S.Ct. 866, 871, 55 L.Ed.2d 40. Allowing front pay runs against the intent of Congress in limiting legal remedies to "unpaid wages and unpaid overtime compensation." The court should not use its equitable powers to frustrate the intent of the statute. *See Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir.).

The legal remedies under the ADEA consist of "unpaid minimum wages and unpaid overtime compensation," thus "items of pecuniary or economic loss such as wages, fringe, and other job-related benefits." H.R.Rep. No. 950, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad. News 504, 535.

Liquidated damages may be recovered when the violation is willful. Liquidated damages are designed to compensate the plaintiff for non-pecuniary losses or highly speculative pecuniary losses. Liquidated damages are a significant factor in this analysis of damages.

The front pay damages are too uncertain to be considered "lost wages" or "lost earned benefits." The possibilities of promotions, legitimate demotions, terminations, or death inject too many unknowns. In these circumstances the award of front pay is too speculative to be considered pecuniary damages under the statute. The enforcement section of the ADEA was specifically constructed to limit the type of available damages. As mentioned, although the statute grants broad equitable powers those powers cannot be used to expand the legal remedies specifically detailed in the statute.

It should be noted that this court has allowed "front pay" damages in some Title VII discrimination cases. *See United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918 (10th Cir.), and *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945 (10th Cir.). Title VII is not the designated statutory model for damages under the ADEA. In light of the specific language of the ADEA and the FLSA it is not appropriate to analogize to Title VII for determination of damages. For a discussion of the difference between the ADEA and the FLSA *see Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40.

I would not decide, as does the majority, that it was error to award front pay because reinstatement is the "preferred remedy." I do not agree that reinstatement should be ordered "whenever it is an appropriate remedy," as the majority states, if this means that such a remedy has some priority or is preferred, or there is some presumption. The Act does not create any such priorities and the matter is best left to the trial court with the usual standard of review. The trial courts are in a better position to decide whether reinstatement will accomplish the purposes of the Act. If there is a choice between "appropriate" remedies the trial court should make it. We do not know the status of the parties in the case before us at this late date nor their relationship with other employees and superiors.

I would thus decide the front pay issue presented to us on the law and the facts

and not decide that something else is preferred.

As to attorney fees, the analysis and the proof would seem to be controlled by the Supreme Court's decision in *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891, which would seem to restrict a multiplication of factors to be considered.