619 F.2d 276
 22 Fair Empl.Prac.Cas. 994, 55 A.L.R.Fed. 590,
22 Empl. Prac. Dec. P 30,838
 Karl C. WEHR
v.
The BURROUGHS CORPORATION, Appellant in No. 79-1265.
Karl C. WEHR, Appellant in No. 79-2403,
v.
The BURROUGHS CORPORATION.
Karl C. WEHR
v.
The BURROUGHS CORPORATION, Appellant in No. 79-2404.
 Nos. 79-1265, 79-2403 and 79-2404.
 United States Court of Appeals,
Third Circuit.
 Argued March 17, 1980.
Decided April 16, 1980.
 
 Carter R. Buller (argued), Robert M. Goldich, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for The Burroughs Corporation, appellant in Nos. 79-1265 and 79-2404 and cross-appellee in No. 79-2403.
 Alan M. Lerner (argued), Faye R. Cohen, Manya L. Kamerling, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for Karl C. Wehr, appellee in Nos. 79-1265 and 79-2404 and as cross-appellant in No. 79-2403.
 Carol Cresswell Moschandreas (argued), Lutz Alexander Prager, Paul E. Mirengoff, Equal Employment Opportunity Commission, Leroy D. Clark, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Washington, D. C., for Equal Employment Opportunity Commission, amicus curiae in Nos. 79-2403, and 79-2404.
 Michael Churchill, Public Interest Law Center of Philadelphia, Philadelphia, Pa., for amicus curiae in Nos. 79-2403 and 79-2404.
 Before ALDISERT and GIBBONS, Circuit Judges, and GERRY, District judge.*
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 These consolidated appeals and cross-appeals from a judgment entered following a jury verdict in this age discrimination case present many issues for review, but the major question for decision is whether the court gave a proper jury charge on what constitutes a "willful violation" of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634.[1] We find no reversible error in the court's instructions, and except for certain modifications of its determinations on attorneys' fees and costs, we affirm the judgment of the district court.
 
 I.
 
 2
 Karl C. Wehr had been employed as an engineer by the Burroughs Corporation since May 1967. He was discharged on August 1, 1975, ostensibly for unsatisfactory work performance, at the age of forty-four. Believing that he was a victim of age discrimination because of the company's expressed desire to replace some older employees with "young tigers," Wehr sought relief in district court in the form of lost wages, including both back and front pay, statutory liquidated damages, compensatory damages for pain and suffering, and attorneys' fees and costs.[2] The jury returned a verdict of $126,760 in Wehr's favor for back pay and liquidated damages, and the court awarded $83,382.13 in counsel fees and costs. In the appeal at No. 79-1265, Burroughs contends that the district court erred in its interpretation and application of the liquidated damages provision of the Act.[3]
 
 II.
 
 3
 The rights created by the Age Discrimination in Employment Act of 1967 (ADEA) are "enforced in accordance with the powers, remedies, and procedures" of specified sections of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 626(b). Following the model of the FLSA, Congress has established two primary enforcement mechanisms within the ADEA. The Secretary of Labor may bring suit on behalf of an aggrieved individual for injunctive and monetary relief. In addition, private actions are authorized by the incorporated FLSA provisions together with § 7(c) of the ADEA, 29 U.S.C. § 626(c), for "such legal or equitable relief as will effectuate the purposes of" the ADEA. In a private action for damages under the ADEA, a plaintiff may initially recover lost wages. In addition, he may recover liquidated damages in an amount equal to the unpaid wages, see FLSA § 16(b), 29 U.S.C. § 216(b), but only when the violation is "willful." ADEA § 7(b), 29 U.S.C. § 626(b). In this respect the district court charged:Members of the jury, the Act provides that the plaintiff is entitled to liquidated damages if the defendant's conduct in violating the Act was willful. . . . (Y)ou will have to determine whether the defendant's violation of the Act was willful. That is, did the defendant willfully use age as a determining factor in its decision to terminate plaintiff?
 
 
 4
 What do we mean by "willfully"?
 
 
 5
 An act is done willfully if it is done intentionally, deliberately and knowingly. Thus, an employer acts willfully in violation of the Act if the employer deliberately, intentionally and knowingly discharged the employee because of his age. In other words, if the employer intended to act consciously and intentionally in the discharge of the employee because of age, the employer acted willfully. The act of the employer must be intentional and cannot be an accident or it would not be willful.
 
 
 6
 Appendix to Briefs at 437a-38a.
 
 
 7
 Burroughs finds two faults with this charge. First, it contends that the ADEA incorporates the good faith test of § 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 260.[4] From this Burroughs would infer that, procedurally, the final decision to award liquidated damages properly rested with the court rather than the jury, and substantively, that the court should have considered whether Burroughs believed in good faith that it had a legitimate reason to discharge Wehr, notwithstanding the jury finding of age discrimination. We reject this contention, and for the reasons stated in Loeb v. Textron, Inc., 600 F.2d 1003, 1020 (1st Cir. 1979),[5] we determine that § 11 of the Portal-to-Portal Act is not incorporated into the ADEA.
 
 III.
 
 8
 Burroughs second attack on the court's jury charge centers on the definition of the term "willful" in ADEA § 7(b). Burroughs contends that the proviso in ADEA § 7(b) that allows liquidated damages only upon a showing of a "willful violation of (the Act)" should be interpreted to mean that an employer is subject to liability for liquidated damages only if he intentionally violates the Act. The district court instructed the jury that "an employer acts willfully in violation of the Act if the employer deliberately, intentionally and knowingly discharged the employee because of his age." Appendix to Briefs at 437a-38a.
 
 
 9
 Although this is a civil case, the degree of culpability known as "willful" comes to us from criminal law. The National Commission on Reform of Federal Criminal Laws has said that "(t)here may be no word in the Federal criminal lexicon which has caused as much confusion as the word 'willfully' (or 'willful')."[6] We agree. The Senate Judiciary Committee has explained that
 
 
 10
 the term "willful" has been construed by the courts in a variety of ways, often inconsistent and contradictory. The courts have defined a "willful" act as an act done voluntarily as distinguished from accidentally, an act done with specific intent to violate the law, an act done with bad purpose, an act done without justifiable excuse, an act done stubbornly, an act done without grounds for believing it is lawful, and an act done with careless disregard whether or not one has the right so to act.[7]
 
 
 11
 The Judicial Conference of the United States has recommended the abolition of "willfully" as a degree of culpability in the proposed revision of the Federal Criminal Code.[8] We are encouraged that the Senate Judiciary Committee endorses the same concept. The Senate Committee Report accompanying S.1722,[9] summarizes the welcomed new approach:The Federal Criminal Code, as reported, discards the confused and inconsistent ad hoc approach to culpability that now characterizes Federal criminal law. Instead it reduces the number of terms used to describe the requisite mental state to four: intentional, knowing, reckless, or negligent. All other statutory formulations within title 18, United States Code, are eliminated. The four degrees of culpability that are retained express the significant distinctions found by the courts and are sufficient for all the distinctions in defining offenses.[10]
 
 
 12
 Until Congress excises "willfully" from our statutes, however, we must distill from the case law some semblance of a consensus in order to decide whether the district court here erred by instructing the jury that "(a)n act is done willfully if it is done intentionally, deliberately and knowingly."
 
 
 13
 Although there is an abundance of confusion in the cases about the actual meaning of "willful,"[11] it has been generally accepted that the term does not denote the same state of mind when used to describe civil violations of statutes as when used to describe criminal violations. Thus, in United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), the decision cited as the leading authority for the proposition that "willful" denotes evil motive, the Court held that a defendant in a criminal prosecution for willful violation of the tax laws was entitled to a jury charge with respect to his good faith and actual belief. In considering whether the word "willfully," as used in the statute under which the indictment was brought, required more than a showing of voluntary action, the Court stated: "The word often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal statute it generally means an act done with a bad purpose . . . ." 290 U.S. at 394, 54 S.Ct. at 225. This distinction between the civil and criminal uses of the word was further elaborated in United States v. Illinois Central R. R., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773 (1938), a case involving a civil violation by the railroad for improperly transporting livestock. The Court addressed the meaning "willfully" should have for civil violations by reaffirming its statement in Murdock :
 
 
 14
 In statutes denouncing offenses involving turpitude, "willfully" is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. Our opinion in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381, shows that it often denotes that which is "intentional, or knowing, or voluntary, as distinguished from accidental," and that it is employed to characterize "conduct marked by careless disregard whether or not one has the right so to act."
 
 
 15
 Id. at 242-43, 58 S.Ct. at 535.
 
 
 16
 Although it is apparent that this unfortunate word is capable of a multitude of meanings and that neither the Supreme Court nor Congress has been willing to fashion a precise meaning for it, we are able to draw some conclusions to assist us in this case. First, only three degrees of culpability are associated with the term "willful": intentional, knowing, or reckless. Merely negligent conduct is never deemed "wilful." E. g., Anderson v. Commissioner, 81 F.2d 457, 460 (10th Cir. 1936). Second, when the Supreme Court speaks of "bad faith," "bad purpose," "evil intent," or "evil nature" in connection with violations of criminal statutes, it is in fact describing the highest degree of culpability. The Court is saying that proof of any of these mental states is equivalent to proof of conduct that is "intentional," as distinguished from "knowing" or "reckless." Third, unless legislative history or the statutory context compels proof of an intentional violation of the statute, or proof of the judicial equivalents "bad faith," "bad purpose," "evil intent," or "evil nature," any conduct that is intentional, knowing, or reckless should be considered "willful." This last approach comports with the National Commission's suggestion to Congress in 1970 that "(a) person engages in conduct . . . 'willfully' if he engages in the conduct intentionally, knowingly, or recklessly,"[12] and finds precedential authority in United States v. Murdock, 290 U.S. 389, 394-95, 54 S.Ct. 223, 225-226, 78 L.Ed. 381 (1933), and United States v. Illinois Central R. R., 303 U.S. 239, 242-43, 58 S.Ct. 533, 534-535, 82 L.Ed. 773 (1938).
 
 
 17
 The starting point in any case is to ascertain the degree of culpability intended by Congress when using "willful." In the absence of enlightenment from legislative history, the term must be construed within its statutory context, civil or criminal. As the Court has directed, we "continue to recognize that context is important in the quest for the word's meaning." United States v. Bishop, 412 U.S. 346, 356, 93 S.Ct. 2008, 2015, 36 L.Ed.2d 941 (1973).[13] Unfortunately, a review of the legislative history of the ADEA and its assimilated acts uncovers nothing helpful on this question. We note, however, that § 6(a) of the Portal-to-Portal Act,[14] which extends by one year the statute of limitations for willful civil violations of the FLSA, is specifically incorporated into the ADEA. See 29 U.S.C. § 626(e)(1). In Hodgson v. Hyatt, 318 F.Supp. 390 (N.D.Fla.1970), a case defining a willful violation of the FLSA, the court offered the following definition of "willful," which we find to be helpful:Since the Portal-to-Portal Act limitations apply to civil actions, the term "willful" which was added by the 1966 amendment must be construed in the civil sense. It therefore applies to violations which are intentional, knowing or voluntary as distinguished from accidental and it is used to characterize conduct marked by careless disregard whether or not one has the right to act. United States v. Illinois Cent. R. Co., 303 U.S. 239, 243, 58 S.Ct. 533, 535, 82 L.Ed. 773.
 
 
 18
 Id. at 392-93.[15] We believe this definition of "willful" as it is used in § 6(a) of the Portal-to-Portal Act, incorporated into the ADEA by 29 U.S.C. § 626(e), also applies to ADEA § 7(b).
 
 
 19
 Accordingly, we conclude that Congress did not intend to restrict the meaning of "willful," as Burroughs suggests, to intentional violations of the ADEA. It is sufficient to prove that the company discharged the employee because of age and that the discharge was voluntary and not accidental, mistaken, or inadvertent. In our view, it would also be sufficient to prove that the discharge was precipitated in reckless disregard of consequences. Using these standards, we reject Burrough's contention that the district court erred in charging the jury that "(a)n act is done willfully if it is done intentionally, deliberately and knowingly." By charging the jury as it did, the district court actually placed a higher burden on the plaintiff in this case than would be required under our formulation.[16] It required the jury to find that Burroughs acted intentionally, and it omitted the culpability degree of "reckless" which, in a civil context, describes a much lower threshold of culpability than does "intentional." Compare Restatement (Second) of Torts § 8A (1965) with id. § 500.
 
 
 20
 In sum, we find no reversible error in the trial court's jury charge on willful violation of the ADEA.
 
 IV.
 A.
 
 21
 Wehr makes several arguments in his appeal at No. 79-2403. Although he was awarded backpay from the date of discharge to the date of trial, Wehr argues that he is also entitled to future damages, or front pay, to some date in the future possibly to the age of retirement as a substitute for the equitable remedy of reinstatement.
 
 
 22
 We will not decide whether future damages may be awarded in ADEA cases, however, because we are persuaded that Wehr has removed this issue from consideration. Any basis for calculating front pay would include the amount Wehr would have received had he continued to be employed by Burroughs beyond the trial date. Of necessity, Wehr's argument that he is entitled to future damages in lieu of reinstatement presupposes that he wanted to be reinstated.[17] At pre-trial, however, Wehr specifically disclaimed any desire for reinstatement.[18] We therefore conclude that the question whether future damages may be recovered in ADEA cases is not properly before us at this time.[19] Wehr's further contention, that the court erred by refusing to permit compensatory damages for pain and suffering including emotional distress, is foreclosed by our decision in Rogers v. Exxon Research and Engineering Co., 550 F.2d 834, 839-42 (3d Cir. 1977), cert. denied, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).
 
 B.
 
 23
 Also in the appeal at No. 79-2403, Wehr's counsel complain that the court's award of attorneys' fees and costs was inadequate. See Wehr v. Burroughs Corp., 477 F.Supp. 1012 (E.D.Pa.1979).[20] Although ultimately awarded a total of $80,651.79, Wehr's counsel sought $161,879 in fees for the litigation on the merits, and $11,816.25 for time expended in preparing the fee petition. In addition, counsel requested reimbursement of $11,053.79 in costs. After Burroughs objected to the reasonableness of the proposed figures, the district court examined the documentation under the standards enunciated by this court in Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) (Lindy I ), Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976) (in banc) (Lindy II ), and their progeny. The court disallowed certain discrete amounts from the proposed lodestar and adjusted that figure downward. It also declined to augment the lodestar by a multiplier. Counsel complain that by doing so, the district court misused its discretion.
 
 
 24
 On review, except for two modifications of the award mentioned below, we will affirm the district court's determination concerning fees and costs, and we reject counsel's various contentions regarding the court's exercise of discretion over whether to multiply the award. Indeed, it appears to us that this should not have been a difficult case for counsel, yet it was overprepared, over-discovered, and overtried by counsel for both sides. Significantly, in its instructions to the jury, the trial court recognized the absence of complexity in this case and summarized the controlling issue in one sentence:
 
 
 25
 Although there has been considerable testimony in this case, your task, members of the jury, is not complicated. You must simply determine whether plaintiff has proven his claim by a preponderance of the evidence that plaintiff's age was a determining factor in defendant's decision to discharge him and if you resolve that issue in favor of the plaintiff, whether, in discharging plaintiff, plaintiff has proven by a preponderance of the evidence that defendant acted willfully.
 
 
 26
 Appendix to Briefs at 425a.
 
 
 27
 We will modify the award of attorneys' fees and costs in two minor respects. First, we note an arithmetical error in the court's computation regarding the award for the fee petition. The district court awarded $4,167 as attorneys' fees for litigating the fee petition. When computing this award, the district court incorrectly stated that counsel's request for $7,877.50 in compensation was for 164.7 hours when, in fact 117.6 hours was the actual figure requested. The district court believed that 164.7 hours greatly exceeded the time reasonably necessary to litigate a fee petition. 477 F.Supp. at 1020-21. It therefore subtracted 50 hours and made a corresponding deduction in fees. This computation resulted in an inaccurately reduced amount, however, because the figure used by the court as the minuend of its equation was the amount ($7,877.50) representing 117.6 hours and not the 164.7 hours that the court believed were billed.
 
 
 28
 Thus, because the court evidently would have allowed 114.7 hours (164.7 minus 50) to litigate the fee petition, and because counsel's billable rates for the fee petition were not determined to be too high, we have decided for the sake of judicial economy not to remand for a redetermination of this calculation, but instead to allow recovery for the entire 117.6 hours requested. Therefore, the district court's award of $4,167 will be increased to $7,877.50, an amount that accurately represents recovery for 117.6 hours.
 
 
 29
 Second, we will modify the district court's award of costs because we disagree with the court's refusal to allow recovery for computer-aided legal research as a reasonable cost of litigation. We will allow recovery of these costs. Use of computer-aided legal research such as LEXIS, or WESTLAW, or similar systems, is certainly reasonable, if not essential, in contemporary legal practice. Indeed, in at least one other case decided in this circuit, this type of cost has been awarded as a reimbursable expense. See Pitchford Scientific Instruments Corp. v. Pepi, Inc., 440 F.Supp. 1175, 1178 (W.D.Pa.1977), aff'd without opinion, 582 F.2d 1275 (3d Cir. 1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979). We think this is the better rule, but we are careful to note that the amount of use must be reasonable in order to be allowed. We conclude that the $440 requested by counsel in this case was reasonable.
 
 V.
 
 30
 Accordingly, the judgment of the district court will be affirmed in all respects except that the award for the fee petition will be increased by $3,710.50 and an additional $440 will be added to the district court costs.
 
 
 31
 Each side to bear its own costs in the appeals before us.
 
 
 
 *
 Honorable John F. Gerry, of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides in part:
 The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. . . . Provided, That liquidated damages shall be payable only in cases of willful violations of this chapter. . . .
 
 
 [2]
 Wehr complied with all administrative procedures under the ADEA before filing his suit in district court
 
 
 [3]
 Burroughs also challenges the admissibility of testimony by plaintiff's witness J. Thomas Platt. We have found no misuse of the trial court's discretion in allowing this testimony. In addition, Burroughs contends that the court erred in its treatment of the question of mitigation of damages. We have concluded that the court properly framed the jury interrogatories to place the burden on defendant to demonstrate both that plaintiff failed to exercise reasonable diligence to mitigate his damages, and that there was a reasonable likelihood that plaintiff might have found comparable work if he had exercised reasonable diligence. Mitigation was properly a question for the jury, and, as such, was resolved against Burroughs. Finally, we find no error in the district court's denial of Burrough's motion for mistrial based on overall prejudice of the Platt testimony
 
 
 [4]
 Title 29 U.S.C. § 260 provides:
 In any action . . . to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.
 
 
 [5]
 The Loeb court reasoned:
 (W)e do not agree that a specific finding as to defendants' good faith under Section 11 of the Portal-to-Portal Act is required before liquidated damages may be awarded in an ADEA case. The Supreme Court in comparing the ADEA and the FLSA in Lorillard v. Pons, (434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)), read the ADEA to permit liquidated damages awards where an ADEA violation is "willful," 434 U.S. at 581, 98 S.Ct. 866, and noted that,
 "Although § 7(e) of the ADEA, 29 U.S.C. § 626(e), expressly incorporates §§ 6 and 10 of the Portal-to-Portal Pay Act, 29 U.S.C. §§ 255 and 259, the ADEA does not make any reference to § 11, 29 U.S.C. § 260. . . ."
 434 U.S. at 581-82 n.8, 98 S.Ct. at 870. This selectivity is strong evidence that Congress did not intend to graft Section 11 onto the ADEA. See id. at 582, 98 S.Ct. 866. The reason is clear: under 29 U.S.C. § 216(b), standing alone, liquidated damages must be awarded once a violation is shown. Section 11 mitigates this result in FLSA cases. Id. at 581 n. 8, 98 S.Ct. 866. In ADEA cases, the "willfulness" test serves the same function and renders Section 11 superfluous.
 600 F.2d at 1020 (footnote omitted). By accepting the reasoning of Loeb, we do not follow Hays v. Republic Steel Corp., 531 F.2d 1307, 1310-12 (5th Cir. 1976), which was decided prior to the analysis of limited selective incorporation of Portal-to-Portal Act provisions set forth in Lorillard v. Pons, 434 U.S. 575, 581-82 n.8, 98 S.Ct. 866, 870-871, 55 L.Ed.2d 40 (1978). In Sikora v. American Can Co., 622 F.2d 1116 (3d Cir. 1980) we noted that § 10 of the Portal-to-Portal Act was incorporated into the ADEA.
 
 
 [6]
 Working Papers, National Comm. on Reform of Federal Criminal Laws 128 (1970) (hereinafter referred to as Working Papers ). Professor Lloyd L. Weinreb, commission consultant, summarized the state of federal law relating to culpability:
 Unsurprisingly, the courts have been unable to find substantive correlates for all these varied descriptions of mental states, and, in fact, the opinions display far fewer mental states than the statutory language. Not only does the statutory language not reflect accurately or consistently what are the mental elements of the various crimes; there is no discernible pattern or consistent rationale which explains why one crime is defined or understood to require one mental state and another crime another mental state or indeed no mental state at all.
 Working Papers at 120.
 The Senate Judiciary Committee has noted:
 Present Federal criminal law is composed of a bewildering array of terms used to describe the mental element of an offense. The National Commission's consultant on this subject identified 78 different terms used in present law. These range from the traditional "knowingly," "willfully," and "maliciously," to the redundant "willful, deliberate, malicious, and premeditated," and "knowingly and willfully," to the conclusory "unlawfully," "improperly," and "feloniously," to the self-contradictory "willfully neglects." No Federal statute attempts a comprehensive and precise definition of the terms used to describe the requisite state of mind. Nor are the terms defined in the statutes in which they are used. Instead the task of giving substance to the "mental element" used in a particular statute, or to be inferred from a particular statute, has been left to the courts.
 Senate Comm. on the Judiciary, Report on Criminal Code Reform Act of 1979, S.Rep.No. 96-553, 96th Cong., 2nd Sess. 59 (1980) (hereinafter referred to as Committee Report ).
 
 
 [7]
 Committee Report, supra note 6, at 59-60
 
 
 [8]
 See Reform of the Federal Criminal Laws: Hearings on S.1 Before the Subcomm. on Criminal Laws and Procedures of the Comm. on the Judiciary, 94th Cong., 1st Sess. 134-135 (April 17 and 18, 1975) (Statement of Hon. Alfonso J. Zirpoli) (hereinafter referred to as Hearings )
 
 
 [9]
 See Omnibus Bill for the Reform of the Federal Criminal Laws, S.1722, 96th Cong., 1st Sess., entitled Criminal Code Reform Act of 1979. For purposes of culpability, § 301 of the new bill reduces the number of terms used to describe the requisite mental state to four. These are defined by § 302 of the bill as follows:
 § 302. "Intentional," "Knowing," "Reckless," and "Negligent" States of Mind
 The following definitions apply with respect to an offense set forth in this title:
 (a) "Intentional". A person's state of mind is intentional with respect to
 (1) his conduct if it is his conscious objective or desire to engage in the conduct; or
 (2) a result of his conduct if it is his conscious objective or desire to cause the result.
 (b) "Knowing". A person's state of mind is knowing with respect to
 (1) his conduct if he is aware of the nature of his conduct;
 (2) an existing circumstance if he is aware or believes that the circumstance exists; or
 (3) a result of his conduct if he is aware or believes that his conduct is substantially certain to cause the result.
 (c) "Reckless". A person's state of mind is reckless with respect to
 (1) an existing circumstance if he is aware of a substantial risk that the circumstance exists but disregards the risk; or
 (2) a result of his conduct if he is aware of a substantial risk that the result will occur but disregards the risk;
 except that awareness of the risk is not required if its absence is due to self-induced intoxication. A substantial risk means a risk that is of such a nature and degree that to disregard it constitutes a gross deviation from the standard of care that a reasonable person would exercise in such a situation.
 (d) "Negligent". A person's state of mind is negligent with respect to
 (1) an existing circumstance if he ought to be aware of a substantial risk that the circumstance exists; or
 (2) a result of his conduct if he ought to be aware of a substantial risk that the result will occur.
 A substantial risk means a risk that is of such a nature and degree that to fail to perceive it constitutes a gross deviation from the standard of care that a reasonable person would exercise in such a situation.
 
 
 [10]
 Committee Report, supra note 6, at 60-61
 
 
 [11]
 See generally decisions collected in Working Papers, supra note 6, at 148-51
 
 
 [12]
 National Comm. on Reform of Federal Criminal Laws, Study Draft of a New Federal Criminal Code § 302(1)(e) (1970). The following definitions of "knowingly," "intentionally," and "recklessly" in the criminal context were recommended to Congress by the Judicial Conference of the United States:
 A person engages in conduct:
 (1) "Knowingly" if, when he engages in the conduct, he does so voluntarily and not by mistake, accident, or other innocent reason;
 (2) "intentionally" if, when he engages in the conduct, he does so knowingly and with the purpose of doing that which the law prohibits or failing to do that which the law requires;
 (3) "recklessly" if, when he engages in conduct with respect to a material element of an offense, he disregards a risk of which he is aware that the material element exists or will result from his conduct. His disregard of that risk must involve a gross deviation from the standard of care that a reasonable person would observe in the situation; except that awareness of the risk is not required where its absence is due to voluntary intoxication. . . .
 Hearings, supra note 8, at 135.
 
 
 [13]
 In the context of distinguishing a "willful" violation from a "serious" violation under the Occupational Safety and Health Act of 1970, we said that "(w)illfulness connotes defiance or such reckless disregard of consequences as to be equivalent to a knowing, conscious and deliberate flaunting of the Act. Willful means more than merely voluntary action or omission it involves an element of obstinate refusal to comply." Frank Irey, Jr., Inc. v. OSHRC, 519 F.2d 1200, 1207 (3d Cir. 1974), aff'd in banc, 519 F.2d 1215 (1975), aff'd on other grounds sub nom. Atlas Roofing Co. v. OSHRC, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977)
 
 
 [14]
 Section 6(a), 29 U.S.C. § 255(a), provides:
 (I)f the cause of action accrues on or after May 14, 1947 (an action) may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action rising out of a willful violation may be commenced within three years after the cause of action accrued.
 
 
 [15]
 See also Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139 (5th Cir. 1972), and Brennan v. Heard, 491 F.2d 1 (5th Cir. 1974). These cases held that proof of an employer's good faith does not establish a defense to a willful violation of PPA § 6. The court in Heard specifically rejected the argument that the employer must have proceeded with knowledge that its actions were contrary to the requirements of the FLSA in order for its violation to be willful. 491 F.2d at 3
 
 
 [16]
 Indeed Burroughs requested a charge that "(o)nly if you find that Burroughs engaged in a conscious effort to violate the Act or acted in reckless disregard of the Act are you to award (liquidated) damages." Appendix to Briefs at 103a
 
 
 [17]
 Wehr was forty-seven years old at the time of trial. Although he had been employed by Burroughs as an engineer, he entered law school the month following his discharge and by the time of trial had nearly completed his studies
 
 
 [18]
 See letter from plaintiff's counsel to the district court, self-styled as Response to Defendant's Memorandum of Law Re Damages Available in Age Discrimination Cases. Joint Appendix at JA-17
 
 
 [19]
 We find no misuse of discretion in the district court's refusal to permit Wehr's belated amendment to the pleadings, offered at the conclusion of the trial, that purported to seek "reinstatement or equivalent monetary relief." See Joint Appendix at JA-4
 
 
 [20]
 Wehr was represented in the early stages of this action by the law firm of Dilworth, Paxson, Kalish & Levy. Of the total $83,382.13 allowed by the court, the Dilworth firm was awarded $2,449.15 in attorneys' fees and $281.19 in costs. These awards have not been challenged on appeal. The law firm representing Wehr on appeal, Cohen, Shapiro, Polisher, Shiekman and Cohen, is appealing its portion of the district court's award