**Mrs. Richard P. CHACE, Executrix of the Estate of Mr. Richard P. Chace, et al.**

v.

**CHAMPION SPARK PLUG COMPANY.**

**Civ. No. PN–88–95.**

United States District Court, D. Maryland.

March 9, 1990.

Robert B. Fitzpatrick, Mark D. Laponsky, David B. Fishman, Fitzpatrick & Verstegen, Washington, D.C., and Alan Ser-

rins, Deinst & Serrins, New York City, for plaintiffs.

Russell H. Gardner, Jeanne M. Phelan, Whiteford, Taylor and Preston, Baltimore, Md. (John A. Garwood, Toledo, Ohio, of counsel), for defendant.

## OPINION

NIEMEYER, District Judge.

Richard P. Chace, Samuel H. Posner and Richard D. Via sued Champion Spark Plug Company alleging that Champion had violated the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621–634 (1982), by terminating their employment because of their age. Their complaint seeks back pay with prejudgment interest, liquidated damages because they contend the termination was willful, reinstatement or, alternatively, an amount for the loss of future income known as front pay.

Prior to trial on motions raised by the parties, the Court determined that the issues of back pay, willfulness and liquidated damages would be submitted to the jury. The issue of front pay and its amount was determined to be "part of the panoply of remedies that can be considered in carrying out the equivalent of the equitable remedy of reinstatement" and was reserved for an equitable trial which was to follow the jury trial. *Chace v. Champion Spark Plug Co.*, 725 F.Supp. 868, 871 (D.Md.1989).

The Court also ruled that prejudgment interest could be included as part of the award of a jury so long as its proof was presented separately. The parties agreed before trial that in the event the Court determined that prejudgment interest would not be allowable, it could be deducted by the Court from the verdict of the jury. *Id.* at 872.

Following a nine-day jury trial, the jury returned a verdict on November 3, 1989, in favor of the plaintiffs awarding $140,000 to Chace, $71,000 to Posner and $92,500 to Via. These amounts included prejudgment interest of $17,679 for Chace, $8,961 for Posner and $11,151 for Via. The jury also found that Champion had acted willfully in considering age as a determining factor in its termination decisions. This finding requires that liquidated damages be awarded in an amount equal to the back pay and benefits awarded by the jury. *See* 29 U.S.C. § 626(b) (incorporating the remedies of 29 U.S.C. § 216(b) (1982)).

The Court conducted the equitable portion of the trial on December 8 and 12, 1989, receiving evidence from the parties in connection with reinstatement and front pay. Thereafter, the parties filed proposed findings of fact and conclusions of law, as well as proposed judgments.

The Court now is presented with the issues (1) whether Posner and Via should be reinstated to their employment at Champion (Chace died before the commencement of the trial); (2) whether Posner and Via alternatively should be awarded front pay in lieu of reinstatement; and (3) whether the judgment should include both prejudgment interest and liquidated damages.

To the extent that this Opinion resolves equitable issues, it will constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

## I. FINDINGS OF FACT

### *Samuel H. Posner*

Champion Spark Plug Company advised Posner on January 15, 1986, that as a result of a corporate reorganization, his position as territory manager was among those to be eliminated. As territory manager he called on dealers and jobbers to sell Champion's automotive products. He remained in the active employ of Champion until February 1, 1986. Thereafter he was placed on leave with pay, and he continued to receive pay through December 31, 1986. At that time he was 53 years old and was earning $41,520 plus fringe benefits.

When Posner was removed from the payroll in December 1986, he was placed in retirement status which gave him the option to elect a lump sum settlement of his retirement benefits in lieu of amounts otherwise payable under the retirement income plan of Champion. Posner elected to receive the lump sum payment and was

paid $111,383. As a retired employee, he has continued to receive medical insurance coverage from Champion.

Posner was born on March 15, 1933, and he began work with Champion on January 1, 1956. At the time of his termination, he had been with Champion 30 years and had planned to continue work until retirement at age 65.

Following termination by Champion, Posner obtained a position similar to the position he held at Champion as a sales agent with Bob White and Associates. That business was just beginning and he and Mr. White worked together to build it. They have succeeded and the sales made by Posner, which in 1986 were $350,000, have increased to over $2 million in 1989. Under the arrangement reached between Posner and Mr. White, Posner receives a commission on sales, which he shares with Mr. White. Posner's gross income before deducting normal business expenses was $34,810 in 1987. This increased to $44,634 in 1988 and was expected to approximate $50,000 in 1989.

The Court finds that Mr. Posner is happily situated in his new position with Mr. White and plans to work in that position until his retirement at age 65. Although he testified that he has made a personal commitment to Mr. White that he will continue in the business until that time and that Mr. White has made a similar commitment to Posner, he acknowledged that "we are going to be together until I decide I want to go or until he decides he wants to go."

During his last couple of years with Champion, Mr. Posner's relationship with his superiors, J. Dan Nicholson and Fred Gage, became somewhat strained. Gage and Nicholson contended that Posner was not performing and gave him job performance ratings that were unlike any that he had received in the prior years with Champion. Posner believes that the reasons given were a subterfuge; he feels a hostility to these two persons and feels that through them he was mistreated by Champion. This, he believes, was manifested in Champion's selection of him for termination and

in its job performance rating of him. Before the strained relationship with Gage, Posner's relationship with Champion was a good one. He testified that he "loved" the company and that his wife commented how he was married to Champion and she was only his mistress. As the result of his relationship with Gage, his termination, and this litigation, Posner testified he no longer had any "real love" for Champion and that he did not have the heart to go out and sell the product again. He summed it up by saying to Champion at trial "I don't love ya any more."

Posner contends that there are no comparable jobs for him to take if reinstatement were ordered and that Champion has not stepped forward with a specific job offer. He contends that reinstatement is not feasible and should not be ordered because to do so would unreasonably disrupt the parties. He believes that an effective employer-employee relationship cannot again be reestablished. In lieu of reinstatement, he prays for "front pay" in the amount of $282,881 consisting of lost future earnings of $177,916, lost life insurance of $6,052, lost disability insurance of $22,131 and lost retirement benefits of $76,782. He notes that each one of those figures has been reduced to present value.

*Richard D. Via*

As was the case with Posner, Via was terminated as a territory manager on January 15, 1986. He was put on leave with pay on February 1 and was paid until December 1, 1986, when he was put on retirement status. At that time he was 58 years old and was earning $34,020 plus fringe benefits. He, too, elected a lump sum payment for his retirement benefits and was paid the sum of $119,073. As a retired employee, he continues to receive medical insurance coverage.

Via was born on March 23, 1927, and began work with Champion on March 1, 1954. When he was terminated in 1986, he had been with Champion almost 32 years and had planned to retire on April 1, 1990, at age 63.

Following his termination by Champion, Via sought employment in April 1986 with

608

automobile parts distributors in the Roanoke, Virginia, area. In a few instances, he was offered employment on a commission basis. Because his income would be entirely based on commission, he testified that he rejected each of those offers. In June 1986 Via abandoned his efforts in locating a position selling automobile parts and began a new career in landscape design and horticulture. He began a training program at the Western Virginia Community College and received a certificate in June 1988. In the interim, he accepted employment with the National Park Service maintaining trails and parks in Virginia. The work is seasonal and his income has been between $12,000 and $13,000 per year.

Via testified that by being out of the automobile parts business since 1986, there would be a re-learning process for him to reenter the business were he to be reinstated. He testified that in his judgment it would take him "several years" to regain the knowledge to put him back where he was. He stated, however, he was prepared to return to Champion. He expressed concern about the possibility of hostility, and he felt that the company needed to prove itself to him again in order to regain his loyalty. He urges that the short period that remains until his retirement date of April 1, 1990, justifies an award of front pay in lieu of reinstatement. He claims "front pay" in the amount of $121,768 consisting of lost future earnings of $12,088, lost life insurance of $527, lost disability insurance of $1,392 and lost retirement benefits of $107,761. He notes that each of those figures has been reduced to present value.

*Champion's changing circumstances*

The demand for Champion spark plugs in recent years has declined because of improved spark plug technology, the general reduction in the number of cylinders in engines, and competition from abroad. As a result, Champion has repeatedly restructured and reorganized in order to bring its expense structure in line with its income.

Following one such reorganization before 1985, some of the plaintiffs in this case were demoted from the position of district manager to a position of territory manager when district manager positions were eliminated by consolidation. In 1985 the company decided again to institute a reduction in force that led to the termination of the plaintiffs and several other employees.

Since the termination of the plaintiffs, Champion has continued to reorganize and reduce its force. In July 1989 Champion was purchased by Cooper Industries which resulted in further changes. As the result of these reorganizations, the persons who were the superiors of Posner and Via are no longer in those positions. The former director of employee relations, John Lusky, retired in November 1989. The former region manager, William Laber, left Champion's employ in November 1986. The zone manager, Dan Nicholson, is currently employed by Champion as one of its fourteen division managers. He is located in Memphis, Tennessee. The former district sales manager, Fred Gage, the principal person with whom Posner testified he had difficulties, is no longer in a supervisory capacity. Also because of reorganizations, beginning in January 1990, the job of territory manager, which was formerly the position held by Posner and Via, was enlarged to include responsibility for calling on warehouse distributors. This newly expanded job, which is currently the basic sales force unit, is known as district sales manager. The person holding that position reports directly to a division manager, eliminating interim levels that previously existed.

The current director of employee relations, William Basedow, testified that if ordered to do so, Champion will reinstate Via and Posner to their former jobs or to substantially equivalent positions. He testified that currently one field sales position is open in the Baltimore–Washington, D.C. area. The person filling that position will report to Michael Leavitt, who is Champion's Division Four manager, covering Maryland, the District of Columbia, most of Virginia, North Carolina and South Carolina.

## II. REINSTATEMENT AND FRONT PAY

In resolving the issues on equitable relief to be granted, if any, the Court must keep

in mind that equitable remedies when combined with the jury verdict (without consideration of liquidated damages) should effect but one goal—that of making the plaintiffs whole, no more and no less. The standard against which wholeness is measured is the state of affairs of the plaintiffs before the impact of the illegal conduct occurred.

In this case both Posner and Via were territory salesmen who were working for a shrinking and changing business. Champion was and is facing new competitive challenges and changes in the market caused by technology. The Court finds that even were these plaintiffs still working for Champion, they would be exposed to the dynamics of these changes.

Although it is speculation to surmise whether the plaintiffs would have been terminated in any event or whether they would have been asked to move because of market factors and thereafter refused, it is clear that they would have been asked to take on additional and different responsibilities. These changes well could have caused either of the plaintiffs to seek early retirement or to change jobs. Apart from the effects of the changes in the employment conditions that have been occurring at Champion, independent causes and conditions could have ended or altered their employment status. These unknown possibilities lead to just the type of speculation that is aberrant to the law of remedies. While the court and jury are charged with making the plaintiffs whole, when it comes to determining what makes plaintiffs whole in connection with potential future losses, the issues must focus only on the damages that can be anticipated with reasonable certainty. Otherwise, an award is little more than a wager and a hope. Under one scenario of future events, plaintiffs could be left without a remedy and under another they could end up with a windfall. In either case, an injustice is done to one party or the other.

It is for these reasons that the most effective remedy for future losses occasioned by termination is reinstatement. While the employer-employee relationship may not be totally restored to its pre-violation conditions, the chances of a proper restoration are greater than by guessing with an award of front pay whether, when and for how much a plaintiff will work in the future. *See Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984).

It is axiomatic that notwithstanding the desirability of reinstatement, intervening historical circumstances can make it impossible or inappropriate. Courts thus have recognized several factual circumstances under which reinstatement is not feasible or appropriate.

■ For example, restatement has not been ordered when the employer has demonstrated such hostility that a productive and amicable working relationship on reinstatement would be impossible. *See E.E. O.C. v. Prudential Fed. Savings and Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Reinstatement may also be inappropriate when the litigation itself has created such animosity between the parties that any potential employer-employee relationship is irreparably damaged, *see Whittlesey*, 742 F.2d at 728; or when the company is no longer in business or the particular business for which the plaintiff was qualified is no longer operating or there is no comparable position available. *Id.* Also, when the period for reinstatement is relatively short, such that the plaintiff is close to retirement, the strong preference in favor of reinstatement is neutralized by the increased certainty of the potential loss of pay permitting consideration of a front pay award. *See McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Combinations of the factual circumstances noted could lead to awards for temporary periods of front pay, such as a time for retraining the employee if that becomes the course more suited to making him whole.

When reinstatement is inappropriate, the Court can consider front pay as an alternative. But the alternative of financial compensation must be more conservatively considered, simply because the loss for which

**610**

compensation is to be afforded is more difficult to predict. Because the future is an unknown, only trends which can be projected with reasonable certainty should be considered.

■ In the case of Posner, the Court finds that he has approximately nine years remaining before his planned retirement at age 65. That period is sufficiently great to expect that if he were reinstated, he could renew a productive employer-employee relationship with Champion. Champion has expressed a willingness to reinstate him and has identified a position which is the same position he would have occupied had he remained an employee, a position which has taken on the additional function of calling on warehouse distributors. The additional function, however, is not new to Posner since he had called on warehouse distributors as a territory manager and had the responsibility for calling on them before that as a district manager. None of the personnel with whom Posner had worked and with whom Posner had any difficulty would be a factor in his future employment relationship. Each of his former supervisors is either retired or transferred to other responsibilities. The Court finds no corporate animus directed against Posner.

Notwithstanding these changed circumstances, Posner has expressed a "loss of heart." The Court concludes, however, that "heart" is not forever lost; it can be found again with resumed work, new supervisory personnel, and new products.

Posner has also pointed to the disruption that reinstatement would cause to his arrangement with Bob White and Associates. The historical growth of Posner's relationship with Bob White's business suggests a potential for further success, perhaps greater than that which he would have enjoyed at Champion. With this satisfaction, he may elect to remain. While that may be a desirable relationship for Posner, his desire to preserve it should not be a ground to cause Champion to pay front pay.

All of these reasons given by Posner for bypassing the desirable remedy of rein-

statement fail to outweigh its feasibility and desirability as the best remedy to restore the potential for future damage. Accordingly, the Court will order reinstatement, at the option of Mr. Posner, and direct Champion to pay Posner a salary of $41,520, the salary he had on termination, adjusted to reflect the increases and decreases experienced in the company since then by persons of average competence at his level. Champion will be ordered also to restore to him the same benefits as are accorded to other employees and to adjust his pension for the lump sum benefit that has already been paid to him and interest.

■ In the case of Via, the Court finds that reinstatement for the period from now to April 1, 1990, when he had in any event intended to retire, would be impractical. The alternative of front pay is reasonably certain and will be awarded.

In computing front pay, the Court should credit Champion with other income that Via received or reasonably should have received. The burden of proving the failure of the plaintiff to mitigate rests with Champion. *See Wehr v. Burroughs Corp.*, 619 F.2d 276, 278 n. 3 (3d Cir.1980). *Cf. Nord v. United States Steel Corp.*, 758 F.2d 1462, 1470–71 (11th Cir.1985) (under Title VII, employer has burden of proving lack of diligence by plaintiff in seeking comparable employment). There was evidence presented at trial that Via turned down opportunities to work on a commission basis in a capacity similar to that which he had at Champion. However, the record is silent on the income that he might have been able to expect from these positions. Accordingly, the Court will award front pay in the amount of $12,088, which constitutes the salary Via claims he would earn from the time of trial through March 31, 1990, less the sums earned and to be earned in his present position.

The front pay award will also include the cost to Via of obtaining disability insurance and life insurance until the date of his prospective retirement. The insurance coverage is limited in that manner because, under Champion's compensation system, life insurance and pension benefits are al-

ternative and mutually exclusive means of providing income to an active employee or his survivors. Once an employee retires and accepts benefits under the pension plan, life insurance protection ceases. Therefore, Champion will be required to pay an amount representing the premiums for disability and life insurance through March 31, 1990, which is a period of approximately one month from the date judgment is entered in this case. Based on the annual premium for long-term disability insurance of $3,300 and the annual premium for life insurance of $1,250, which were submitted by plaintiffs, the pro-rated amounts that will be awarded are $275 for disability insurance and $104 for life insurance.

With respect to the retirement benefits, the Court finds that the pension benefit due to Via on April 1, 1990, is $151,582. *See* Defendant's Exhibit 247. This figure will be reduced by $144,640, which is the lump sum payment of $119,073 that Via received in 1987 for retirement benefits, adjusted to April 1, 1990, at the annual rate of 6% (the rate used by plaintiffs' expert) compounded monthly. The pension benefit that will be awarded therefore is $6,942.

The total "front pay" award to Via will be $19,409.

## III. LIQUIDATED DAMAGES AND PREJUDGMENT INTEREST

Because the jury found willfulness, which requires an award to plaintiff of liquidated damages, *see* 29 U.S.C. § 626(b) (incorporating the remedies of 29 U.S.C. § 216(b) (1982)), the Court must decide whether prejudgment interest may also be awarded.

The cases decided by the Fourth Circuit before the trial in this case have held that prejudgment interest is not available if liquidated damages are awarded in ADEA cases. *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 489 (4th Cir.1982); *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981). These decisions were based on the premise which is applied in cases brought under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201–219 (1982), that liquidated damages compensate a plaintiff for delays in receiving back pay. *See Spagnuolo*, 641 F.2d at 1114 (*citing Masters v. Maryland Management Co.*, 493 F.2d 1329, 1334 (4th Cir.1974)). Prejudgment interest also is designed to compensate for delays in receiving compensation. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). Thus, under the FLSA rationale, awarding prejudgment interest while at the same time awarding liquidated damages provides double compensation to a plaintiff. *Id.*

The plaintiffs contend, however, that the Supreme Court's decision in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), sheds new light on the issue. In *Thurston*, the Supreme Court stated that liquidated damages under the ADEA are "punitive in nature." *Id.* 469 U.S. at 125, 105 S.Ct. at 623. The plaintiffs have seized upon this language from *Thurston* and, supported by *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278 (2d Cir.1987), and *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094 (11th Cir.1987), argue that prejudgment interest *is* available even if liquidated damages are awarded.

Prior to *Thurston*, six of the seven circuits that had addressed the issue in the ADEA context did not allow prejudgment interest if liquidated damages were awarded. Cited by circuit, *see Kolb v. Goldring, Inc.*, 694 F.2d 869, 875 (1st Cir.1982); *Spagnuolo*, 641 F.2d at 1114 (4th Cir.); *Rose v. National Cash Register Corp.*, 703 F.2d 225, 230 (6th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101–03 (8th Cir.1982); *Blim v. Western Electric Co.*, 731 F.2d 1473, 1479–80 (10th Cir.), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984); *O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543, 1552 (11th Cir. 1984), *overruled by Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1102 (11th Cir.1987). Only the Ninth Circuit took the opposite view and allowed ADEA

plaintiffs to receive both prejudgment interest and liquidated damages. *Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 556–57 (9th Cir.1983), *aff'd on other grounds*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985).

Since *Thurston* was decided, two circuits have joined the Ninth Circuit on this issue. *See Reichman*, 818 F.2d at 281–82 (2d. Cir.); *Lindsey*, 810 F.2d at 1102 (11th Cir.). In addition, a district court in the Eighth Circuit has held that *Thurston* changes the previously held view in that circuit. *Price v. Arkansas College*, 683 F.Supp. 712, 714 (E.D.Ark.1988) (not following *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093 (8th Cir.1982) in light of *Thurston* ). The Fifth and Seventh Circuits, on the other hand, have continued to deny prejudgment interest to those plaintiffs who receive liquidated damages under the ADEA. *See Burns v. Texas City Refining, Inc.*, 890 F.2d 747, 752–53 (5th Cir.1989); *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1335–37 (7th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700, *vacated on other grounds*, 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988); *Kossman v. Calumet County*, 800 F.2d 697, 702–03 (7th Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987). In addition, the First Circuit has given strong indication that it too would continue to follow its pre–*Thurston* thinking. *See Linn v. Andover Newton Theological School, Inc.*, 874 F.2d 1, 7 n. 9 (1st Cir. 1989).

In reaching its decision, the Seventh Circuit noted that Congress intended for courts to look to the FLSA to determine damages under the ADEA. *Coston*, 831 F.2d at 1336. Courts should not

> whittle into the damages analysis required by the FLSA simply because the result might be different if one looked at the ADEA as a separate animal from the FLSA and ignored the congressional command to look to the FLSA for damages. The decision to provide damages to ADEA plaintiffs as if they were FLSA damages is a decision made by Congress that precludes the courts from "legislating" their own favored remedies.

*Id.* The court stated that *Thurston* does not alter this rationale; it merely requires that liquidated damages be awarded after a punitive standard has been met and does not dictate how those damages should be calculated. *Id.*

Similarly, in *Linn* the First Circuit stated in dictum that "*Thurston* dealt only tangentially" with the issue. *Linn*, 874 F.2d at 7 n. 9. The court added that if the Supreme Court had really intended for its characterization of liquidated damages in *Thurston* to mean that prejudgment interest could be awarded when liquidated damages were awarded, then it would be reasonable to assume that the Supreme Court would have analyzed the legislative history more fully, in particular a 1978 House Report that "states flatly that 'the ADEA as amended by this act does not provide remedies of a punitive nature.' " *Id.* (citation omitted). Moreover, the *Thurston* Court did not discuss any lower court decision holding that prejudgment interest was not available when liquidated damages were awarded. *Id.* Thus, the First Circuit concluded, it is doubtful that the Supreme Court "intended to overrule, *sub silentio*, a view held by virtually every circuit to have considered the issue." *Id.*

Thus, outside of the Fourth Circuit, the post–*Thurston* split leaves the First, Fifth and Seventh Circuits with the view that both prejudgment interest and liquidated damages are not available, and the Second and Eleventh Circuits, and one district court in the Eighth Circuit, with the contrary view.

The Supreme Court's characterization of liquidated damages in *Thurston* as "punitive in nature" rested on an analysis of the legislative history of the ADEA. 469 U.S. at 125, 105 S.Ct. at 623. The legislative history reveals that the ADEA had originally been proposed by Senator Javits, among others, as an amendment to the FLSA. The amendment was dropped in committee but the administration submitted its own legislative proposal on age discrimination. 113 Cong.Rec. S7076 (daily ed. March 16, 1967) (testimony of Sen. Jav-

its), *reprinted in* U.S. Equal Employment Opportunity Commission, *Legislative History of the Age Discrimination in Employment Act* 71 (1981) (hereinafter *"Legislative History"*). Senator Javits then proposed amendments to that legislation because it provided criminal penalties for willful violations. *Id.* Criminal penalties, Senator Javits argued, could very well impede efforts to stamp out age discrimination because of the higher burden of proof standard and the prospect of witnesses invoking the privilege against self-incrimination. 113 Cong.Rec. at S2199 (daily ed. February 1, 1967), *reprinted in Legislative History* at 64. Therefore, Senator Javits proposed that double damage civil liability be substituted. "This will furnish an effective deterrent to willful violations and at the same time avoid the difficult problems of proof which would arise under a criminal provision." 113 Cong.Rec. at S7076, *reprinted in Legislative History* at 71. Senator Javits' proposed amendment was eventually incorporated into the final bill.

It was this portion of the legislative history that prompted the Supreme Court to characterize liquidated damages under the ADEA as punitive. *See Thurston,* 469 U.S. at 125, 105 S.Ct. at 623. When analyzed in light of the issue in the instant case, the legislative history increases in significance because it discloses that liquidated damages under the ADEA and liquidated damages under the FLSA are *not* one and the same. Liquidated damages under the FLSA are designed to compensate individuals for damages that are "too obscure and difficult of proof for estimate." *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682 (1942). It is for this reason that prejudgment interest is not available under the FLSA because otherwise a plaintiff would receive "interest on interest." *Brooklyn Sav. Bank,* 324 U.S. at 715, 65 S.Ct. at 906. Liquidated damages under the ADEA, however, serve an entirely different function. They act as a deterrent and enable a plaintiff to recover for a willful violation without having to satisfy the heavier burden of proof standard found in criminal cases. 113 Cong.

Rec. at S7076, *reprinted in Legislative History* at 71. Thus, as indicated by the testimony of Senator Javits, the liquidated damages provision of the ADEA, 29 U.S.C. § 626(b), replaces the criminal liability provision of the FLSA, 29 U.S.C. § 216(a); it is not merely a repetition of the FLSA provision for liquidated damages, 29 U.S.C. § 216(b).

The legislative history referred to by the First Circuit to support its analysis in *Linn,* 874 F.2d at 7 n. 9, is the House Conference Report No. 95–950, 95th Cong., 2d Sess. at 14 (the "Report"), U.S.Code Cong. & Admin.News 1978, p. 528, *reprinted in Legislative History* at 513–25. The Report was submitted in response to a disagreement between the House and Senate on the 1978 Amendments to the ADEA. Report at 1, *reprinted in Legislative History* at 513. The relevant portion of the Report that was cited by the *Linn* court and the other circuits which have held that prejudgment interest is not available if liquidated damages are awarded, *see, e.g., Blim,* 731 F.2d at 1479; *Gibson,* 695 F.2d at 1102, relates to a discussion of the 1978 amendment that provided a right to a jury trial. Report at 13–14, *reprinted in Legislative History* at 524–25. The Report discussed the propriety of jury trials and stated that

> [b]ecause liquidated damages are in the nature of legal relief, it is manifest that a party is entitled to have the factual issues underlying such a claim decided by a jury. The ADEA as amended by this act does not provide remedies of a punitive nature. The conferees therefore agree to permit a jury trial on the factual issues underlying a claim for liquidated damages because the Supreme Court has made clear that an award of liquidated damages under the FLSA is not a penalty but rather is available in order to provide full compensatory relief for losses that are "too obscure and difficult of proof for estimate other than by liquidated damages." *Overnight Transportation Company v. Missel,* 316 U.S. 572, 583–584 [62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682] (1942).

Report at 14, U.S.Code Cong. & Admin. News 1978, p. 535, *reprinted in Legislative History* at 525.

It would appear that the Report does not undermine the Supreme Court's analysis of the legislative history in *Thurston.* The Report did not discuss the purpose of the ADEA liquidated damages provision, as expressed by Senator Javits in 1967. The Report merely stated the Conference's reasons for supporting the amendment that provided a right to a jury trial in ADEA cases. Moreover, it is not clear why the characterization of liquidated damages under the FLSA as compensatory rather than punitive has any bearing on whether a jury trial should be afforded. The Court believes, therefore, that the Report does not alter the legislative history and purpose of the ADEA provision when adopted.

A comparison of the remedy provisions of both the FLSA and the ADEA also highlights the difference in purpose of liquidated damages under the two statutes. Under the FLSA, liquidated damages are available to *any* victorious plaintiff. *See* 29 U.S.C. § 216(b). Under the ADEA, however, liquidated damages are not available in every case, but only if a violation is willful. 29 U.S.C. § 626(b).

Accordingly, the legislative history, as analyzed by the Supreme Court in *Thurston,* and the differing purposes and functions served by liquidated damages under the ADEA and the FLSA lead this Court to the conclusion that prejudgment interest should be available under the ADEA even if liquidated damages are awarded. If a plaintiff were to be awarded both prejudgment interest and liquidated damages, he would not be receiving double compensation for his injuries, or "interest on interest." *Brooklyn Sav. Bank,* 324 U.S. at 715, 65 S.Ct. at 906. In reaching this conclusion the Court does not "ignore the congressional command to look to the FLSA for damages," nor is it " 'legislating' [its] own favored remedies." *Coston,* 831 F.2d at 1336. The FLSA provides the basis for *computing* liquidated damages under the

ADEA; this fact does not preclude a finding that they are to be awarded under differing circumstances.

On February 5, 1990, however, before the briefing in this case had been completed, the Fourth Circuit handed down its decision in *Hamilton v. 1st Source Bank,* 895 F.2d 159 (4th Cir.1990), in which it held:

We think that *Thurston* does not require us to reverse our previous holding regarding prejudgment interest and liquidated damages. *Thurston* did not address the issue of prejudgment interest, and its holding regarding liquidated damages as punitive was in the context of defining the standard for "willfulness." Without a more direct mandate from the Supreme Court, we will not disturb our previous decision on this matter.

*Id.* at 166.

Because this Court is bound by the decision in *Hamilton,* the verdicts of the jury will be adjusted by removing prejudgment interest, and awarding liquidated damages.

A separate judgment will be entered giving effect to the verdict of the jury and this Opinion.

## JUDGMENT

In accordance with the prior rulings of the Court, the verdict of the jury returned on November 3, 1989, and the Opinion of this date, it is hereby ORDERED this 9th day of March, 1990, that:

1. Judgment is entered in favor of the plaintiffs Mrs. Richard P. Chace, executrix, and against the defendant Champion Spark Plug Company in the amount of $244,642.*

2. Judgment is entered in favor of the plaintiff Samuel H. Posner and against the defendant Champion Spark Plug Company in the amount of $124,078.*

3. The defendant Champion Spark Plug Company shall reinstate Samuel H. Posner, at his option which shall be exercised within 30 days, to a position that is substantially similar to that which he last occupied (with the altered responsibilities occasioned by the reorganizations of the Company) at

---

* Amounts have been computed by reducing the jury verdict by the amount of prejudgment interest, by doubling that sum, and by adding "front pay," if awarded.

a salary of $41,520, adjusted to reflect the increases and decreases experienced since Posner's termination by persons in the Company of average competence at his level. Champion shall also restore to Posner, if he elects reinstatement, the same benefits as are accorded to other employees and to adjust his pension for the lump sum benefit that has already been paid to him with interest.

4. Judgment is entered in favor of the plaintiff Richard D. Via and against Champion Spark Plug Company in the amount of $182,107.*